# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MICHAEL G. BURGESS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-13-0724-M** |
| | ) | |
| **EDWARD EVANS, Interim** | ) | |
| **Director DOC,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, appearing through counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Docs. 1, 9. Chief United States District Court Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Respondent has filed a response, Doc. 14, with the trial transcripts (TR) and original record (OR), and Petitioner has filed a reply. Doc. 19. For the reasons set forth below, the undersigned recommends that the court deny habeas relief.

## I. Introduction.

Petitioner Michael Burgess was the elected Sheriff of Custer County, Oklahoma and a member of the Washita/Custer County Drug Court Team.

Doc. 9, at 24-25.[1]  The State accused him of engaging in unlawful acts with female drug court participants, bribery, and sexual battery of an employee. OR, Index of Records at 55-69.  Eventually, a jury convicted Petitioner of: Count 1, engaging in a pattern of criminal offenses (victim Joy Mason); Count 2, sexual battery (victim Deputy Jennifer Tyler); Counts 6, 26, and 36, bribery by a public official (involving Brenda Brown, Joy Mason, and Cimberly Taylor); Count 7, kidnapping (victim Brenda Brown); Counts 8 and 33, forcible oral sodomy (victims Brenda Brown and Joy Mason); and Counts 9, 27, 29, 32, and 34, second-degree rape (victims Brenda Brown and Joy Mason).  TR Vol. 10, at 2745-47, 2750-52.

After his conviction, Petitioner appealed to the Oklahoma Court of Criminal Appeals (OCCA), which affirmed his convictions and sentences.  *See Burgess v. Oklahoma*, 243 P.3d 461 (Okla. Crim. App. 2010).  Petitioner then sought post-conviction relief, Doc. 14, Ex. 4, which the state court denied.  *Id.* Ex. 5.  On appeal, the OCCA affirmed the denial of post-conviction relief.  *Id.* Ex. 7.

---

[1]    Citations to page numbers refer to this Court's CM/ECF pagination.

## II.    Petitioner's claims.

Petitioner raises seven propositions in his writ of habeas corpus, which the undersigned has elected to address in the following order: (1) insufficiency of the evidence, (2) unconstitutional jury instructions, (3) unconstitutional juror selection, (4) ineffective assistance of trial counsel, (5) juror misconduct, (6) ineffective assistance of appellate counsel, and (7) cumulative error. Doc. 1, at 7-14.

## III.    Standard of review for habeas relief.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). A petitioner is entitled to federal habeas relief only if that merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA"). This standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington*, 131 S. Ct. at 786.

This Court first determines "whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012).

Clearly established law consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *See House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *See Bland*, 459 F.3d at 1009. "A decision is 'contrary to' clearly established federal law . . . if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts . . . materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the result reached by the Supreme Court." *Id.* (quotations omitted) (alterations in original). "As a condition for obtaining federal habeas relief, . . . a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.[2]

Throughout the analysis, the court must presume the state court's factual findings are correct unless the petitioner rebuts that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV. Analysis.

### A. Petitioner's claim that insufficient evidence supported his convictions.

Petitioner argues that evidence was insufficient to support his convictions on Counts 1, 26, 27, 29, 32, 33, 34, and 36, because the evidence did not support the element that he was an employee of the court or the political subdivision that exercised authority over the victim. Doc. 9, at 46-52. For Counts 6-9, Petitioner argues that logistically and factually, it was impossible for him to commit these crimes within a thirteen-minute timeframe. *Id.* at 52-58.

---

[2]    Although Petitioner's counsel acknowledges that the AEDPA applies, he cites only cases as recent 2003, Doc. 9, at 22-24, ignoring more recent Supreme Court cases, including *Harrington* and *Johnson*, which detail the AEDPA's rigorous and highly deferential standards. *See Harrington*, 131 S. Ct. at 784-85; *Johnson*, 133 S. Ct. at 1096.

The OCCA rejected both arguments on direct appeal. For Counts 1, 26, 27, 29, 32, 33, 34, and 36, the state appellate court held that "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the victims were under the legal custody or supervision of a political subdivision of the state and that Appellant was an employee of the political subdivision that exercised authority over the victims beyond a reasonable doubt." *Burgess*, 243 P.3d at 464. On Counts 6-9, the OCCA reasoned that "[t]he jury rationally concluded that the prosecuting witness was in Appellant's vehicle a sufficient period of time for the offenses to have occurred" and that the evidence "was sufficient to prove beyond a reasonable doubt that Appellant was guilty of the offenses concerning [Brenda Brown]." *Id.* at 464-65.

The undersigned finds that the OCCA's decision as to all counts was a reasonable application of federal law and recommends that the court deny Petitioner's claim for habeas relief.

### 1. Clearly established law.

The United States Supreme Court clearly established the constitutional right to sufficient evidence of guilt in *Jackson v. Virginia*. 443 U.S. 307, 324 (1979); *see Lott v. Trammel*, 705 F.3d 1167, 1219 (10th Cir. 2013) (agreeing that *Jackson* provided "the clearly established law applicable to [an insufficient evidence] claim"). Under this decision, the question is "whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Under *Jackson*, the standard for evidence sufficiency "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." 443 U.S. at 324 n.16.

### 2. Counts 1, 26, 27, 29, 32, 33, 34, and 36.

As noted in § I, Petitioner was convicted of Count 1, engaging in a pattern of criminal offenses; Counts 26 and 36, bribery by a public official; Count 33, forcible oral sodomy; and Counts 27, 29, 32, and 34, second-degree rape. The undersigned examines each crime in turn.

### a. Count 1 – Engaging in a pattern of criminal offenses.

The State alleged that Petitioner engaged in a pattern of criminal offenses in Oklahoma and Custer Counties against victim Joy Mason. OR, Index of Records, at 56. To convict Petitioner of that crime, the State had to prove that Petitioner committed "two or more criminal offenses . . . that are part of the same plan, scheme, or adventure" in "two or more counties in [the State of Oklahoma.]" Okla. Stat. tit. 21, § 425(A)(B)(1) & (C).

For Count 1, Petitioner's argument rests on the success of his other insufficiency claims. That is, Petitioner states that because "the prosecution

failed to prove beyond a reasonable doubt all of the essential elements of the offenses alleged to have occurred in Custer County," the State cannot have proved commission of crimes in two or more counties. Doc. 9, at 52. As discussed below, the OCCA reasonably rejected Petitioner's insufficiency of the evidence claims for the remaining counts. So, Petitioner's argument relating to Count 1 is meritless.

### b. Counts 26 and 36 – bribery by a public official.

In Counts 26 and 36, Petitioner was found guilty of bribing Joy Mason and Cimberly Taylor. To prove this crime, the State was required to show in relevant part[3] that Petitioner was a public employee acting with intent to permit his official action to be influenced. *See* Okla. Stat. tit. 21, § 382; Okla. Unif. Jury Instrs. (criminal) (OUJI-CR) 3-12.

### i. The "public employee" element.

Petitioner first challenges the evidence that he was a "public employee" of the Washita/Custer County Drug Court team. Doc. 9, at 51. However, the OCCA found as a matter of law that: (1) "'any county, precinct, district, city, town or school district' constitutes a political subdivision"; (2) "the County

---

[3] Because Petitioner challenges only the elements relating to his position of authority (or lack thereof), the undersigned has elected not to set out every element for each crime.

Sheriff's office and the District Court's Drug Team constitute political subdivisions of the state"; (3) "[b]y statute, the Sheriff of the county is required to participate in the initial review of an offender to determine [her] eligibility for the program if they are held in the county jail"; and (4) "[t]he Legislature has defined the term 'employee' as any persona who is authorized to act in behalf of a political subdivision or the state without or without being compensated" and that "[t]his includes all elected or appointed officials, members of governing bodies and other persons designated to act for an agency or political subdivision." *Burgess*, 243 P.3d at 463-64.

This Court "must defer to the Oklahoma state courts on their interpretation of Oklahoma's law." *Heard v. Addison*, 728 F.3d 1170, 1175 (10th Cir. 2013) (citation omitted). "This rule applies with equal force to interpretations of state law 'announced on direct appeal of the challenged conviction.'" *Id.* (citation omitted). So, the OCCA's interpretation of state law "is insulated from our [habeas review]." *Id.*

Petitioner does not dispute that he was the Sheriff of Custer County and a member of the Washita/Custer County Drug Court team. Doc. 9, at 24-25. And, the OCCA's ruling that Oklahoma law therefore made Petitioner a "public employee" of the Washita/Custer County Drug Court Team is binding on this Court. So, the court should find that the OCCA reasonably applied

*Jackson* when it found sufficient evidence that Petitioner was a "public employee" under Okla. Stat. tit. 21, § 382.

## ii.    The intent to be influenced element.

Petitioner also claims that Joy Mason was never physically incarcerated at the Custer County Jail, and there is insufficient evidence that he "had any authority to influence [Joy] Mason's status as a participant in the drug court program." *Id.* at 51-52. So, according to Plaintiff, there is insufficient evidence that he acted with intent to permit his official action to be influenced. *Id.* at 52. In particular, Petitioner points to testimony from Ken Thiessen, the Washita/Custer County Drug Court coordinator, that the district court judge has the ultimate authority over drug court participants, and while the team members can offer opinions regarding a participant's case, that Petitioner did not therefore have the authority to send a participant to jail. *Id.* at 49 (citing TR Vol. 3, at 617-18, 672-73).

The OCCA rejected this argument on direct appeal, and the undersigned finds that decision to be a reasonable application of *Jackson*.

Contrary to Petitioner's claim, the State was not required to prove that he had the authority to terminate Ms. Mason's drug court participation and place her in jail. Instead, the State had only to prove that Petitioner asked for something with the intent to influence his official actions. *See* Okla. Stat. tit. 21, § 382; OUJI-CR 3-12.

As the OCCA noted as a matter of law, Petitioner's office "conducted urinalysis testing of the drug court participants." *Burgess*, 243 P.3d at 461. Further, the State produced evidence that Petitioner asked for and received sexual favors from Joy Mason through: (1) threatening to vote for her termination from the drug court program if she did not submit to his demands, TR Vol. 5, at 1236-47, 1373-75; (2) instructing his employees to let Ms. Mason use a different bathroom during urinalysis testing; *id.* Vol. 6, at 1624, 1706-07, 1737; and (3) twice intervening and stopping jail employees from reporting Ms. Mason's positive drug tests. *Id.* at 1677-86, 1699-1705, 1738-41.

Relatedly, the State also produced evidence that Joy Mason's cousin, Cimberly Taylor, called Petitioner and reported that she had evidence confirming a sexual relationship between Petitioner and Ms. Mason. In response, Petitioner offered to get Ms. Taylor's brother out of prison in exchange for the evidence. *Id.* Vol. 7, at 1892-94.

A rational trier of fact could find beyond a reasonable doubt that Petitioner asked for sexual favors from Joy Mason, and possession of the incriminating evidence from Cimberly Taylor, with the intent to allow his official actions to be influenced. So, the OCCA reasonably applied *Jackson* in rejecting this claim on appeal.

### c. Count 33 – forcible oral sodomy, and Counts 27, 29, 32, and 34 – second-degree rape.

Petitioner raises the same challenges to the sufficiency of the evidence for Count 33 (forcible oral sodomy) and Counts 27, 29, 32, and 34 (second-degree rape) – all involving Joy Mason. For each count, the State had to prove that Petitioner was an employee of a state agency, county, or political subdivision that had supervision or authority over a person with whom he engaged in sexual acts. *See* Okla. Stat. tit. 21, § 888; OUJI-CR 4-128 (forcible sodomy); Okla. Stat. tit. 21, § 1111(A)(7); OUJI-CR 4-124 (second-degree rape). According to Petitioner: (1) Washita/Custer County Drug Court Program is not a "political subdivision" of the State; (2) he was never an "employee" of the Drug Court Program; and (3) he was never in a position of authority over any victim. Doc. 9, at 47-49.

The OCCA rejected these arguments as a matter of law. The OCCA first held that under Oklahoma law, both "the County Sheriff's Office and the District Court's Drug Court Team constitute political subdivisions of the state." *Burgess*, 243 P.3d at 463. Then (as discussed above), the OCCA held that as a matter of state law, Petitioner was an "employee" of the Drug Court Team. *Id.* at 464. Finally, the OCCA held that per statute, as a member of the Drug Court Team, Petitioner was required to: (1) conduct the urinalysis

tests on drug court participants; and (2) monitor the participant's progress.

*Id.* at 463-64. The OCCA held:

> It must be noted that the Oklahoma Legislature has determined that those citizens who have been entrusted to the custody, supervision or authority of individuals serving in the capacity of officers, employees, or contractors with the state or its political subdivisions *are due special protection during the time of custody or supervision. It is readily apparent that [Petitioner], as the elected Sheriff of Custer County,* and statutorily designated member of the Drug Court team, *is a person included within the parameters of the penal statutes in which the Legislature sought to include as owing special trust and confidence to those citizens ordered into their custody or control.* [Petitioner] violated that trust, and the provisions of the penal statutes, drafted to protect those committed citizens. The provisions of both [Okla. Stat. tit. 21,] §§ 1111 and 888(B)(4) prohibit a county employee from engaging in sex acts with an individual under the county's supervision. [Petitioner] as County Sheriff and designated Drug Court Member is included within both statutes as an individual for whom it is unlawful to engage in sex acts with persons under their supervision.

*Id.* at 464 (emphasis added).

The OCCA's interpretation of Oklahoma state law binds this Court. *See Heard*, 728 F.3d at 1175. So, under these circumstances, the undersigned finds that the OCCA reasonably applied *Jackson* when it found sufficient evidence that Petitioner was an employee of a political subdivision that had supervision or authority over Joy Mason when he engaged in sexual acts with her.

### 3.    Counts 6, 7, 8, and 9.

Petitioner further challenges the sufficiency of the evidence to support his convictions on Counts 6, 7, 8, and 9, involving Brenda Brown. Doc. 9, at 52-58. As discussed in § I above, Petitioner was convicted of bribery by a public official (Count 6), kidnapping (Count 7), forcible oral sodomy (Count 8), and second-degree rape (Count 9).

To prove each crime, the State had to show that Petitioner:

- was a public employee acting with intent to permit his official action to be influenced. *See* Okla. Stat. tit. 21, § 382; OUJI-CR 3-12 (bribery by a public official).

- unlawfully inveigled Ms. Brown with the intent to hold her to some service against her will. *See* Okla. Stat. tit. 21, § 741; OUJI-CR 4-110 (kidnapping).

- was an employee of a state agency, county, or political subdivision that had supervision or authority over Ms. Brown with whom he engaged in sexual acts. *See* Okla. Stat. tit. 21, § 888; OUJI-CR 4-128 (forcible sodomy); Okla. Stat. tit. 21, § 1111(A)(7); OUJI-CR 4-124 (second-degree rape).

According to Petitioner, Ms. Brown's testimony was "so contradictory and unsatisfactory in nature and her story so thoroughly impeached that her testimony is unworthy of belief and insufficient as a matter of law to sustain [his] convictions on Counts 6-9, inclusive." Doc. 9, at 55.

On direct appeal, the OCCA disagreed, finding that "the jury rationally concluded that the prosecuting witness was in [Petitioner's] vehicle a sufficient period of time for the offenses to have occurred." *Burgess*, 243 P.3d

14

at 464. Applying the necessarily deferential review, the court should find that the OCCA's conclusion was a reasonable application of *Jackson*.

At trial, Ms. Brown testified that she was a participant in the Washita/Custer County Drug Court Program, and on January 3, 2007, she was in the company of an individual in violation of the drug court rules. TR Vol. 3, at 706, 745. That evening, Petitioner and another officer visited Ms. Brown's house, and based on the violation, Petitioner told Ms. Brown that she "was in bad trouble" and "was going to jail." *Id.* at 749, 751, 757-58. Petitioner also told Ms. Brown to "get in the pickup." *Id.* at 760.

Ms. Brown testified that once she was in Petitioner's car, he continued to say: "You are in so much shit. You are in a lot of trouble. You are going to be terminated over this." *Id.* at 761. Petitioner then began to drive, and stated: "I can save you, because, you know we all know it takes one vote." *Id.* at 764-65. He then told Ms. Brown that: "If the team voted, . . . he could put a vote in and say, no I don't want to terminate her, it is the judge's final say, but the judge listens to the team as a group and they will go from there." *Id.* at 766.

According to Ms. Brown, Petitioner then began to explain that: "You will be going to jail tonight. There's nothing I can do about that[]" but "what I can do is, I can let you be a trusty and have some commissary." *Id.* at 767. Ms. Brown testified that she understood Petitioner to be saying that "he could

15

help me in that way and if I would help him, he would help me." *Id.* Petitioner then pulled into a barn, and Ms. Brown understood "what was happening" and "didn't fight it." *Id.* at 768. According to Ms. Brown, "we parked and we're sitting there for a second and he opens his pants and then it was real clear. I knew." *Id.* at 769. Petitioner "just told me that I help him and he'll help me." *Id.* Then, with his penis exposed, Petitioner "moved the seat back and his steering wheel up." *Id.* at 770. Ms. Brown testified that she understood that she was being asked to put Petitioner's penis in her mouth, which she did. *Id.* at 769, 770-71. Ms. Brown stated that this act was "against her will." *Id.* at 771. When Petitioner did not have an orgasm, he asked Ms. Brown to "sit on his lap." *Id.* at 772. Ms. Brown understood that she was being asked to "have sex with him." *Id.* After the two had sexual intercourse, *id.* at 773-74, Petitioner transported Ms. Brown to jail. *Id.* at 777-78. Ms. Brown testified that the entire incident only lasted a few minutes, "maybe . . . ten minutes." *Id.* at 775.

Ms. Brown admitted that when an agent with the Oklahoma Bureau of Investigation (OSBI) asked her if anything had happened between her and Petitioner, she initially lied. *Id.* at 853-84. Eventually, Ms. Brown reached out to R.C. Daniels, a drug task law enforcement officer, and told him a portion of her story. *Id.* at 857-60. Ms. Brown stated that she was not entirely forthcoming because she was not sure she could trust another law

enforcement officer. *Id.* at 860, 867-68. In fact, Ms. Brown stated that at one point she had "decided to keep my fat mouth shut and just take it to my grave, because all this stuff is not worth it. I just want my life back. I want to live normal and I want out of here." *Id.* at 867.

Finally, attorneys filing a civil suit against Petitioner contacted Ms. Brown and she confided her story to them. *Id.* at 870-71. Ms. Brown stated that she told the attorneys the entire history because: "I was comfortable with them. When I talked to them, they listened to every word I had to say. They didn't belittle me and talk to me like I was nothing. They listened to what I had to say and they cared. And they said they could help me." *Id.* at 871-72. Thereafter, OSBI agents re-interviewed Ms. Brown and she gave her complete statement. *Id.* at 873-75. Ms. Brown testified that she was honest with the OSBI agents because she "was starting to feel more at ease" and "felt it was the right thing to do." *Id.* at 877.

Petitioner introduced evidence at trial that he called dispatch to state he was bringing Brenda Brown to the jail at 8:39 p.m. and arrived at the facility at 8:52 p.m. – thirteen minutes later. TR Vol. 7, at 2013-15, 2018-20.

Petitioner challenges Ms. Brown's testimony on grounds that: (1) it was uncorroborated; (2) her statements were "incredible in light of other credible evidence presented at trial, i.e., the undisputed evidence that Ms. Brown had completely fabricated her testimony regarding the numerous incidents

alleged to have occurred . . . in various motel rooms"; (3) Ms. Brown gave inconsistent statements to law enforcement officials; and (4) "it is simply not plausible that during a 13-minute trip . . . Petitioner stopped his truck . . . and engaged in various sexual acts with Ms. Brown." Doc. 9, at 52-58.

The undersigned finds that the OCCA's rejection of these arguments was a reasonable application of *Jackson*. For instance, in Oklahoma "[a] conviction for rape may be sustained upon the uncorroborated testimony of the prosecuting witness, unless such testimony appears incredible and so unsubstantial as to make it unworthy of belief." *Ray v. State*, 762 P.2d 274, 277 (Okla. Crim. App. 1988). Where the witness was "lucid, clear and devoid of ambiguity" and her "memory and veracity were thoroughly tested on cross-examination," the court will find that her "testimony was not inconsistent, incredible or contradictory." *Id.* Here, Ms. Brown remained lucid, clear and consistent in her testimony, and she gave explanations for her prior inconsistent statements. Further, the jury was instructed that they could consider Ms. Brown's inconsistent statements and "determine the affects [on] the believability of the witness." OR, Index of Records, at 554.

Ms. Brown also testified that after her release from jail, Petitioner engaged in sexual acts with her in various motel rooms. TR Vol. 3, at 811-53. And, the jury found Petitioner not guilty of those alleged crimes. OR, Index of Records, at 515-18, 527-29, 533-36, 591-601. Even if this established that Ms.

Brown "completely fabricated" this testimony, the jury nevertheless chose to believe Ms. Brown's testimony regarding the January 3, 2007 events. It is not for this Court to "'weigh conflicting evidence or consider the credibility of witnesses.'" *Matthews v. Workman*, 577 F.3d 1175, 1184 (10th Cir. 2009) (citation omitted).

Finally, as the OCCA held, "the jury rationally concluded that the prosecuting witness was in [Petitioner's] vehicle a sufficient period of time for the offenses to have occurred." *Burgess*, 243 P.3d at 464. Ms. Brown testified that the sexual acts took approximately ten minutes to complete, and Petitioner was alone with the victim for at least thirteen minutes. A rationale trier of fact could have found beyond a reasonable doubt that there was sufficient time for Petitioner to have committed the relevant crimes.

### 4. Summary.

The question for this Court is not whether there was sufficient evidence to convict Petitioner. Instead, the question is whether the OCCA unreasonably applied *Jackson* when it concluded that any rational trier of fact could find Petitioner guilty beyond a reasonable doubt. Based on the forgoing, the undersigned finds that the OCCA reasonably applied *Jackson* in holding that there was sufficient evidence to convict Petitioner on Counts 1, 6, 7, 8, 9, 26, 27, 29, 32, 33, 34, and 36. So, the undersigned recommends that

the court deny habeas relief on Petitioner's claim involving insufficient evidence.

**B.    Petitioner's challenge to jury instructions.**

The trial court instructed the jury that: (1) "Washita/Custer County Drug Court is a Political Subdivision of the State of Oklahoma" (Instruction 70, OR, Index of Records, at 546); and (2) "a voting team member of the Washita/Custer County Drug Court is an employee of a political subdivision of the State of Oklahoma that exercised authority over all its participants." (Instruction 71, OR, Index of Records, at 547). Petitioner seeks habeas relief on grounds that these instructions: (1) relieved the State of its burden to establish key elements of second-degree rape, forcible sodomy, and bribery by a public official, (2) conflicted with Oklahoma law, and (3) contradicted the trial evidence. Doc. 9, at 72-76.

**1.    Clearly established law.**

Petitioner does not claim that the U.S. Supreme Court has expressly disavowed the instructions at issue here as violative of due process. If no holding of the Supreme Court has addressed the issue, the state court's decision could not have been contrary to, or an unreasonable application of, clearly established federal law. *See Carey v. Musladin*, 549 U.S. 70, 77, (2006). Nevertheless, "[c]laims of erroneous jury instructions can justify setting aside a state conviction on habeas . . . if 'the errors had the effect of

20

rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense, or is otherwise constitutionally objectionable as, for example, by transgressing the constitutionally rooted presumption of innocence.'" *Dockins v. Hines*, 374 F.3d 935, 938-39 (10th Cir. 2004) (quoting *Brinlee v. Crisp*, 608 F.2d 839, 854 (10th Cir.1979)); *see Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (Generally, "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.") (citations and internal quotation marks omitted).

### 2. Analysis.

On direct appeal, the OCCA concluded that "the jury instructions accurately stated the applicable law." *Burgess*, 243 P.3d at 465.

As discussed above, this Court "must defer to the Oklahoma state courts on their interpretation of Oklahoma's law." *Heard*, 728 F.3d at 1175. The OCCA concluded as a matter of law that the County Sheriff's Office and the District Court Drug Court Team are political subdivisions of the State of Oklahoma, and that Petitioner, as a "statutorily designated member of the Drug Court team, is a person included within the parameters of the penal statutes in which the Legislature sought to include as owing special trust and confidence to those citizens ordered into their custody or control." *Burgess*,

243 P.3d at 464. And since that is the applicable law in Oklahoma, Petitioner cannot establish that the giving of these instructions in any way rendered his trial fundamentally unfair. *See Adkins v. Six*, 320 F. App'x 850, 852 (10th Cir. 2009) (rejecting petitioner's claim that jury instruction rendered his trial fundamentally unfair where state court "found that this jury instruction accurately stated applicable law").

## C.    Petitioner's challenge to juror selection.

Three prospective jurors, each a member of the Church of God in Christ, Mennonite Congregation, submitted letters explaining that their religious beliefs precluded them from sitting as jurors in Major County, Oklahoma. Doc. 14, Ex. 5, at 2. The trial court excused these jurors for cause, and Petitioner contends that the excusal resulted in the disqualification of a distinctive group in violation of his due process rights. Doc. 9, at 59-72.

On post-conviction, the trial court found no constitutional violation in the jurors' excusal for cause. Doc. 14, Ex. 5, at 6-7. On appeal from that decision, the OCCA acknowledged Petitioner's independent claim, but ultimately addressed the issue in the context of an ineffective assistance of counsel claim. *Id.* Ex. 7, at 7-11. Nevertheless, based on the *Harrington's*

teachings, the undersigned presumes that the OCCA adjudicated the claim on the merits. *See* 131 S. Ct. at 784-85.

## 1. Clearly established law.

The Supreme Court recognizes a defendant's right to a fair cross section of the community in a venire's comprisal. *See Taylor v. Louisiana*, 419 U.S. 522, 527 (1975) (holding that the fair-cross-section venire requirement includes a representative venire, so that the jury will be "drawn from a fair cross section of the community"). However, the trial court may dismiss a juror for cause if his "views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 420 (1985) (citation omitted). The undersigned finds that the OCCA did not unreasonably apply federal law in rejecting Petitioner's claim.

## 2. Analysis.

The trial court struck the three parties for cause after they submitted letters stating that their religious faith prevented them from serving on a jury. TR Vol. 5, at 1183-85. When a trial court strikes an individual for cause, this Court must "accord deference to the trial court." *Uttecht v. Brown*, 551 U.S. 1, 7 (2007) ("[D]eterminations [involving whether the court should strike a juror for cause are] entitled to deference even on direct review; the

respect paid such findings in a habeas proceeding certainly should be no less.'" (citation omitted)).  This deference "is owed regardless of whether the trial court engages in explicit analysis regarding [the potential juror's] substantial impairment."  *Id.*; *see also Eizember v. Trammell*, No. CIV-08-377-C, 2013 WL 6670275, at *10 (W.D. Okla. Dec. 18, 2013) (unpublished order) (holding that the court must "defer to the trial court's determination of whether a particular juror is qualified to serve").  "Under these conditions, a habeas petitioner challenging juror cause determinations faces a high hurdle[.]"  *Eizember*, 2013 WL 6670275, at *10.

The record demonstrates that the trial court excused the parties based upon information that their religious beliefs prevented them from sitting in judgment of another individual, and forcing them to serve would be a "substantial hardship to the prospective juror[s]."  TR Vol. 5, at 1183-85; Doc. 14, Ex. 5, at 2, 6-7; *see also* Supplemental OR[4] at 60-67.  Given the considerable deference owed to the trial court's decision, the undersigned cannot conclude that the OCCA erred in denying relief based on the trial

---

[4]    This portion of the original record is entitled Supplemental Notice of Completion of Record for Appeals from District Court.

court's exclusion of the Mennonite jurors. The undersigned finds that the court should deny habeas relief on this ground.

D.   **Petitioner's claim involving ineffective assistance of trial counsel.**

Relatedly, Petitioner claims that his trial counsel provided ineffective assistance when he failed to challenge the trial court's excusal of the three Mennonite jurors. Doc. 9, at 34-37. Then, in a conclusory fashion, Petitioner alleges that "[t]rial counsel's obvious failure to investigate and advise appellate counsel of trial issues [was] not sound strategy in light of the evidence that was available to appellate counsel from the trial proceeding." *Id.* at 37. The OCCA rejected the first claim on the merits, Doc. 14, Ex. 7, at 7-12, and the undersigned finds the second claim too conclusory to warrant habeas review.

1.   **Clearly established law.**

For claims involving ineffective assistance of counsel, the Supreme Court "clearly established" federal law in *Strickland v. Washington*, 466 U.S. 668 (1984). There the Court held that a petitioner must show that the attorney's performance was constitutionally deficient and prejudicial. *Id.* at 690-91. The court will only consider an attorney's performance "deficient" if it falls "outside the wide range of professionally competent assistance." *Id.* at 690. "[P]rejudice" involves "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."
*Id.* at 694.

> ## 2. Analysis.
>
> ### a. Trial counsel's failure to object to the court's excusal of the Mennonite jurors.

In his first and only substantive argument, Petitioner complains that his attorney failed to object, move for mistrial, or seek a new trial based upon the trial court's excusing three prospective jurors. Doc. 9, at 34-37. On post-conviction appeal, the OCCA held that trial counsel's performance was not constitutionally deficient because he engaged in sound trial strategy. Doc. 14, Ex. 7, at 7-11. The OCCA reasoned that:

> The trial on Petitioner's thirty-six count Amended Information lasted twelve days and accumulated transcripts exceeding 2,500 pages. Assuming the excused veniremen could not be recalled in time for the scheduled jury selection process, the only remedy available to cure the presumed error would be continuing the trial until a new pool of jurors could be summoned. *Petitioner's retained counsel, prepared and ready for a complex and extended trial, could either make an objection causing a continuation of the trial and continued detention or bail for the client or could forego the objection and waive the error.* By not objecting and deciding to waive the error and to proceed to trial, Petitioner at most would surrender the possibility of having three Mennonite parishioners as a part of a jury that would be required to hear, among other things, Petitioner's testimony that he repeatedly engaged in adulterous sexual relations with a female participant of the County Drug Court Program while he served as County Sheriff.

*Id.* Ex. 7, at 8 (emphasis added). The OCCA stressed that this was a

"legitimate foundation for counsel electing not to object to the jury pool in this particular situation." *Id.* The undersigned finds this decision to be a reasonable application of *Strickland*.

During this Court's highly deferential review of *Strickland's* first prong, "'[e]very effort must be made to evaluate the conduct from counsel's perspective at the time [he did not object.].'" *Hooks*, 689 F.3d at 1186-87 (citation omitted). Further, the court must "strongly presume" that counsel "'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* at 1187 (citation omitted).

As the OCCA noted, Petitioner's trial lasted many days, included testimony from thirty witnesses relevant to thirty-six counts, and produced thousands of exhibit pages. TR Vols. 2-10; OR Exhibits, Vols. 1-2. The undersigned agrees that the OCCA reasonably determined that trial counsel demonstrated sound trial strategy when he chose not to delay or repeat this extensive and intricate trial simply to challenge the excusal of three jurors, particularly, as the OCCA noted, when the trial court excused these jurors based on their firmly held religious beliefs and Petitioner was accused of engaging in adulterous sexual relations.

### b. Trial counsel's failure to investigate issues for appeal.

The second aspect to Petitioner's ineffective assistance of trial counsel claim is his argument that the attorney failed "to investigate and advise appellate counsel of trial issues." Doc. 9, at 37-38. Unfortunately, Petitioner does not articulate which issues trial counsel failed to investigate for purposes of advising appellate counsel. Indeed, Petitioner points to no issue that would not have been apparent to appellate counsel from the trial transcripts. *Id.* at 37-38; *see also id.* at 45 (complaining that appellate counsel should have interviewed Petitioner and investigated further to find "critical evidence [that] would have been available on direct appeal" but failing to articulate what issues or evidence might have been found). As a result, the undersigned cannot conduct any meaningful review of this argument and recommends that the court reject it. *See Humphreys v. Gibson*, 261 F.3d 1016, 1023 n.2 (10th Cir. 2001) (rejecting habeas allegations because they were "conclusory" (citation omitted)); *see also United States v. Blanca-Leon*, 317 F. App'x. 836, 838 (10th Cir. 2009) ("Conclusory assertions are insufficient to establish ineffective assistance of counsel." (citation omitted)).

### E. Petitioner's claim that juror misconduct deprived him of a fair trial.

Petitioner further seeks habeas relief based on alleged juror misconduct. According to Petitioner, "Juror #2" used a cellular telephone to

contact family members during jury deliberations, and he complains that "it is unknown what the party on the other end of the telephone communication may have said to [Juror #2]." Doc. 9, at 77-84. Relatedly, Petitioner complains that when the court sent a police officer to check on the welfare of Juror #2's children, "it illustrated to the jurors that the State's resources were on their side," and "provided outside influence that the jury should realize that the State's resources could protect them in a time of need and that [Petitioner] could not." *Id.* at 78. Finally, Petitioner argues that other jurors retained their cellphones during deliberations and "could have been sending text messages to third parties about the case and receiving responses in turn." *Id.* at 79.

### 1. Clearly established law.

Supreme Court precedent clearly establishes that an external influence affecting a jury's deliberations violates a criminal defendant's right to an impartial jury. *See, e.g., Parker v. Gladden*, 385 U.S. 363, 364-66 (1966) (per curiam); *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965). Especially troubling are private communications between a juror and a third party. *See Fullwood v. Lee*, 290 F.3d 663, 677 (4th Cir. 2002) ("The Supreme Court has clearly stated that private communications between an outside party and a juror raise Sixth Amendment concerns." (citing *Parker*, 385 U.S. at 364)).

29

"Private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Mattox v. United States*, 146 U.S. 140, 150 (1892).

### 2. Analysis.

On post-conviction appeal, the OCCA recited the following findings of fact: (1) "the specific cellphone call made by one juror during the jury's deliberation was made from the bailiff's cell phone. This call was brief and made in the presence of the bailiff and was for the limited purpose of ensuring the juror's children would be cared for during jury deliberations on the date the phone call was made"; (2) "the record did not support the factual allegation that the jurors possessed cell phones during their deliberations"; and (3) "[a]lthough a police unit was dispatched to the juror's home to verify the children's welfare, that information was not given to the juror." Doc. 14, Ex. 7, at 5 n.2.

Petitioner did not challenge the state trial court's findings of fact when he had the opportunity. And, Petitioner's speculations offered here do not substitute for "clear and convincing evidence" to rebut the presumption of correctness. 28 U.S.C. § 2254(e)(1); *see also Tibbetts v. Bradshaw*, 633 F.3d 436, 446 (6th Cir. 2011) (noting that petitioner's argument was based on "pure speculation, which fails to meet the clear and convincing standard

required to overcome the presumption of correctness afforded the state trial court's findings of fact").

So, presuming that Juror #2's third-party communication did not involve discussion of Petitioner's case, the undersigned finds no prejudice or harmfulness in the communication. And, since the jurors did not have access to their cell phones during deliberations and the one juror who used the bailiff's phone was unaware that the police had checked on the welfare of that juror's children, the undersigned finds no evidence of improper third-party communications. Based on such, the undersigned concludes that the OCCA reasonably applied federal law in rejecting Petitioner's claim.

**F.      Petitioner's challenge to appellate counsel's effectiveness.**

As discussed above, Petitioner believes his trial counsel was ineffective in his performance involving the trial court's excusal of three jurors. Petitioner relatedly argues that appellate counsel was ineffective for failing to challenge trial counsel's conduct on direct appeal. Doc. 9, at 39-46. Petitioner also claims, again in a conclusory fashion, that had appellate counsel interviewed Petitioner and properly investigated issues for appeal, she would have learned of "the other critical errors" and found "critical evidence [that] would have been available on direct appeal." *Id.* at 45.

The OCCA rejected Petitioner's first claim on the merits, Doc. 14, Ex. 7, at 11-12, and this was a reasonable application of federal law. As before, the undersigned finds Petitioner's second argument too conclusory for review.

### 1. Clearly established law.

*Strickland* again provides the clearly established federal law applicable to Petitioner's ineffective assistance of appellate counsel claim. 466 U.S. at 687; *see Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that "the proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*"). In the context of an appellate counsel claim, this means "that [appellate] counsel unreasonably failed to discover [a] nonfrivolous issue[ ] and to file a merits brief raising [it]." *Smith*, 528 U.S. at 285. And, "the [petitioner] must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. In other words, Petitioner "must show a reasonable probability that, but for his counsel's unreasonable failure to" raise a particular nonfrivolous issue, "he would have prevailed on his appeal." *Smith*, 528 U.S. at 285.

### 2. Analysis.

#### a. Appellate counsel's failure to raise a claim of ineffective assistance of trial counsel.

Because Petitioner's ineffective assistance of appellate counsel argument relates to trial counsel's alleged error, the court examines the trial

attorney's conduct. *See Duckett v. Mullin*, 306 F.3d 982, 996 (10th Cir. 2002) ("In order to succeed on his claim that appellate counsel was ineffective [for failing to raise a claim of ineffective assistance of trial counsel, Petitioner] must first demonstrate that he would have been entitled under *Strickland v. Washington*, . . . to relief for the ineffectiveness of trial counsel."). The undersigned has already done so, and agrees with the OCCA that trial counsel's performance was not constitutionally deficient. *See supra* § IV(D)(2)(a). Because the underlying claim is meritless, appellate counsel's failure to raise it on direct appeal does implicate a constitutionally deficient performance. *See Duckett*, 306 F.3d at 996; *see also Upchurch v. Bruce*, 333 F.3d 1158, 1164 (10th Cir. 2003) (holding that "'if the [underlying] issue is meritless, its omission [from the direct appeal] will not constitute deficient performance'" (citation omitted)). So, the undersigned finds that the OCCA's reasonably applied *Strickland* in rejecting this claim on appeal.[5]

---

[5]     Because appellate counsel's performance was not deficient, the court need not reach *Strickland's* prejudice prong. Regardless, the undersigned notes that the OCCA's holding dispels any need to even speculate as to whether there is a reasonable probability that Petitioner would have succeeded on direct appeal if appellate counsel had raised the ineffective assistance of trial counsel claim. *See Freisinger v. Keith*, No. CIV-09-836-C, 2011 WL 4526761, at *5 (W.D. Okla. July 28, 2011) (unpublished magistrate judge recommendation) (finding no ineffective assistance of appellate counsel in light of the OCCA's announcement that the outcome of the state appeal

## b.    Appellate   counsel's   alleged   failure   to investigate and interview Petitioner.

As he did in his claim for ineffective assistance of trial counsel, Petitioner alleges very vaguely that appellate counsel failed to investigate and turn up critical information for the direct appeal. Doc. 9, at 45. Again, however, Petitioner offers no examples to support his conclusory conclusion. *See id.* For this reason, the undersigned cannot conduct any meaningful review and recommends that the court deny habeas relief. *See Humphreys*, 261 F.3d at 1023 n.2 (rejecting habeas allegations because they were "conclusory" (citation omitted)); *see also Blanca-Leon*, 317 F. App'x. at 838 ("Conclusory assertions are insufficient to establish ineffective assistance of counsel." (citation omitted)).

---

"would have been no different" had appellate counsel raised the relevant claim), *adopted*, 2011 WL 4502298 (W.D. Okla. Sept. 28, 2011) (unpublished district judge order), *appeal dismissed*, 473 F. App'x. 846, 849 (10th Cir.), *cert. denied,* No. 12-6404, 2012 WL 4373589 (U.S. Nov. 26, 2012); *Flippo v. Jones*, No. CIV-09-1240-C, 2010 WL 1224240, at *1, *9 (W.D. Okla. Feb. 4, 2010) (unpublished magistrate judge recommendation) ("Given the OCCA's [rejection of the claims], . . . . Petitioner has . . . failed to demonstrate a reasonable probability that the result of his direct appeal would have been different had his appellate counsel raised a claim of ineffective assistance of trial counsel . . . ."), *adopted*, 2010 WL 1334238 (W.D. Okla. Mar. 23, 2010) (unpublished district judge order), *certificate of appealability denied*, 392 F. App'x 652 (10th Cir. 2010).

### G. Cumulative error.

In his final argument, Petitioner claims that the accumulation of errors deprived him of a fundamentally fair trial. Doc. 9, at 84-86. Petitioner raised this claim during his post-conviction appeal, Doc. 14, Ex. 6, at 30-31, and while the OCCA did not specifically address the issue, *Id.* Ex. 7, at 1-11, the undersigned presumes that the appellate court denied it on its merits. *See Harrington*, 131 S. Ct. at 784-85.

#### 1. Clearly established law.

The Tenth Circuit has recognized a circuit split regarding whether a cumulative error analysis is clearly established federal law, and has acknowledged its own lack of published precedent. *See Cole v. Trammell*, 755 F.3d. 1142, 1177 (10th Cir. 2014). However, the court also noted "that Tenth Circuit 'precedent may very well signal where our court has come down on the issue – *viz.*, that cumulative-error analysis is clearly established law.'" *Id.* (citation omitted). With that posture, the undersigned finds that the OCCA's decision on this issue was reasonable.

#### 2. Analysis.

"In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the

trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (citations and internal quotations omitted); *see also Ochoa v. Workman*, 669 F.3d 1130, 1146 (10th Cir. 2012) ("In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors . . . ."). So, the court also considers the impact of any constitutional claims that "have been individually denied for insufficient prejudice." *Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003) (holding that because a claim involving "substantive prejudice components essentially duplicate the function of harmless-error review," "such claims should be included in the cumulative-error calculus if they have been individually denied for insufficient prejudice").

Here, the undersigned found no constitutional errors that were otherwise harmless, and only Petitioner's claim involving alleged jury misconduct was denied for insufficient prejudice. Lacking two or more errors to cumulate, Petitioner cannot show that the OCCA unreasonably applied federal law in rejecting the claim.

## VII. Recommended ruling and notice of right to object.

For the reasons discussed above, the undersigned recommends that the court deny the petition for habeas relief.

The undersigned advises the parties of their right to object to this report and recommendation by the 23rd day of November, 2014, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

Entered this 3rd day of November, 2014.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE